2013 VT 40

## In re Wood NOV & Permit Applications

## Town of Hartford v. Marc and Susan Wood

[75 A.3d 568]

No. 12-146

Present: **Reiber, C.J., Skoglund, Burgess and Robinson, JJ., and Zonay, Supr. J., Specially Assigned**

Opinion Filed June 14, 2013

Motion for Reargument Denied August 1, 2013

192

*Paul S. Gillies* of *Tarrant, Gillies, Merriman & Richardson, LLP,* Montpelier, for Appellants.

*William F. Ellis* of *McNeil, Leddy & Sheahan, P.C., Burlington,* for Appellee.

¶ 1. **Robinson, J.** Landowner Marc Wood appeals the most recent decision of the Superior Court, Environmental Division in this more than decade-long dispute between the Town of Hartford and landowner concerning, primarily, his construction of a large concrete-slab retaining wall along his and his wife's property. We affirm.

I.

¶ 2. In order to put the issues presented in this appeal in context, we consider the lengthy history of this dispute. As the environmental court explained in its March 2012 decision below:

> [The parties] have engaged in multiple litigations, in multiple courts, over multiple years, all with common themes: whether various plans for development of two adjoining parcels of land along Vermont Route 14 should be approved, whether the development that has occurred is in accordance with either a prior zoning permit or the applicable zoning regulations, and whether Marc Wood's development of those parcels should be regarded as violating those zoning regulations.

¶ 3. The property in question contains two parcels. One, referred to as the "Diner Parcel," includes a building that was previously operated as the Hartford Diner. The Diner Parcel, which is titled solely to Marc Wood, has not been commercially operational in years. The second parcel, owned by Marc and Susan Wood, is referred to as the "Club Parcel." Within that parcel is a building that was developed as a club facility and used as a local grange lodge. The parties dispute whether the use of the building on the Club Parcel has continued to the extent and in a manner that would allow it to be considered a preexisting nonconforming use. The two properties are dissected by a zoning district boundary line; part of each parcel is within the Village Business Zoning District (VB District) and part within the Village Residential One Zoning District (VR-1 District).

¶ 4. Sometime before 1999, in conjunction with the development of the Woods' parcels, landowner proposed the construction of a retaining wall along the parcels' southern and western boundaries. The retaining wall, proposed to reach a height of thirty-five feet, was aimed at increasing the developable portion of the lots, which sloped away from the adjacent highway at a significant angle and thus contained a limited amount of level land that could be effectively developed. As first proposed, the wall was to be constructed of stone, but the proposal was later amended to call for the use of concrete slabs to be recovered from a nearby highway bridge reconstruction project. Landowner hired an engineer, John B. Stevens, to prepare the design for the proposed wall. The design prepared by engineer Stevens included detailed

specifications concerning, among other things, the thickness of the slabs, the minimum width, the removal of fixtures or steel from the slabs prior to placement, the placement and construction of transverse joints, the level of the slabs, and the method of cutting the slabs.

¶ 5. On October 14, 1999, the Town approved landowner's application for a zoning permit to construct the retaining wall. That permit, Permit #99-1180, was not appealed and became final once the appeal period expired. The permit was "issued on the condition that before a Certificate of Occupancy is issued the Engineer of Record, John Stevens, or his assigns, must certify that the concrete slab walls were constructed in accordance with the approved design." The permit further stated: "The applicants understand that they must make the necessary arrangements during construction to insure that the Engineer will have the necessary information to make this determination."

¶ 6. In early 2000, landowner began stockpiling the recycled concrete slab sections on the lower portion of the subject property. Concerned that the slabs did not conform to the engineering specifications incorporated into Permit #99-1180, the Town served the Woods with a notice of violation (NOV) and filed an enforcement action with the environmental court. The enforcement complaint was consolidated with an appeal of the NOV and with a property easement dispute between the Woods and the Town. On September 21, 2001, the environmental court issued several orders concerning the consolidated litigation.

¶ 7. In one of the decisions most relevant to this appeal, the court determined that the landowner had failed to "meet the specifications for . . . the permit as approved" with respect to thickness of the slabs, whether the ends of the slabs had been hammered rather than sawed, and whether steel reinforcing bars were protruding from the slabs. The court acknowledged the possibility that the specifications for the slabs could be amended and the slabs used safely for the project, but cautioned that the Woods "must apply to the permitting authority for approval of the amended certifications." Landowner appealed the September 21, 2001 environmental court decision to this Court, and a three-justice panel affirmed the decision in May 2002. See *Town of Hartford v. Wood*, No. 2001-473, 2002 WL 34423566 (Vt. May 29, 2002) (unpub. mem.), http://www.vermontjudiciary.org/d-upeo/upeo.aspx.

¶ 8. In April 2003, landowner filed an application to amend Permit #99-1180, but the town zoning administrator declined to accept the application, stating that the permit had expired and that, in any case, the application could not be treated as a request to amend the previous permit because of the extent of the proposed changes from the permitted design. Landowner appealed, and in May 2004 the environmental court ruled that 371 days still remained on Permit #99-1180 and that the Town had to "consider the application to amend, which may include a ruling on its completeness." The court further ruled that the application would be governed by whatever regulations were in effect at the time of the application.

¶ 9. Landowner promptly submitted to the Town a renewed application to amend the permit, including, among other things, a redesigned retaining wall. That application included letters and a revised retaining wall plan by engineer John Stevens. In July 2004, the town zoning administrator rejected the applications as incomplete and informed landowner that his applications would have to include not only completed application forms, but also retaining wall plans from an engineer, a site plan, and a narrative description of how the new plans for the retaining wall differed from the design authorized by Permit #99-1180. Landowner appealed, asking the Zoning Board of Adjustment (ZBA) to find his applications complete and ready for review by the ZBA or the planning commission. The ZBA upheld the zoning administrator's conclusion that the applications were incomplete, ruling that the amended retaining wall plans had to be approved by the ZBA and the planning commission and that the revised site plan had to be prepared by an engineer.

¶ 10. Landowner appealed to the environmental court, which in April 2006 ruled that the Town's regulations gave the Town discretionary authority to require landowner to submit a site plan prepared by a professional engineer. The court stated:

> [N]othing could have confirmed the need for engineered site and retaining wall plans more than this Court's site visit, which demonstrated the enormity of [Mr. Wood's] project and the threat to public safety that [the] project presents if it were to proceed without consultation and approval of a licensed engineer experienced with constructing retaining walls with recycled concrete slabs.

The court also rejected landowner's challenge to the Town's application submission policy, ruling that everything required by the Town was authorized in the Town's zoning regulations. Landowner's appeal of that decision to this Court was dismissed as untimely filed in July 2006.

¶ 11. Following the environmental court's April 2006 decision, landowner filed another application with the Town to amend Permit #99-1180. In August 2007, on appeal from the Town's rejection of the application as incomplete, the environmental court noted that landowner had not contested the Town's assertion that his most recent application did not include a site plan completed by a licensed engineer. The court reaffirmed the finality of its "prior determination that any amendment of the permit Mr. Wood previously received must include a site plan completed by a Vermont licensed engineer." Thus, the court declined landowner's request to reconsider that prior determination, stating that "Mr. Wood's retaining wall is a significant structure" and "its failure could cause significant harm and damages to him and others."

¶ 12. In the meantime, even though he did not have a new or amended permit, in 2006 landowner began building the wall.

¶ 13. In a March 2008 decision, the environmental court once again dealt with landowner's request that the court reconsider a number of its prior decisions. The court noted that landowner's requests "appear to represent a lack of understanding of the basic concept of finality of court decisions." Specifically, landowner asked the court to revisit its September 2001 decision ruling that his retaining wall did not comply with the conditions of Permit #99-1180. The court considered landowner's request to be in the nature of a motion for relief from judgment under Vermont Rule of Civil Procedure 60(b) and denied it. Landowner also sought reconsideration of the court's August 2007 decision, arguing that his most recent permit application should be exempted from site plan approval requirements, and in particular the requirement that he submit a site plan completed by a licensed engineer. Once again, the court rejected this argument, noting that it had already decided the issue twice before. The court ruled that the doctrine of issue preclusion barred landowner from relitigating whether the Town had the authority to require him "to submit site plans completed by a licensed engineer." The court also ruled that Permit #99-1180 had finally expired on March 10, 2007.

¶ 14. Shortly after this decision, the parties filed competing motions for contempt. The Town contended that landowner had developed his property without a permit and in violation of the court's order. For his part, landowner argued that the Town had deliberately refused to consider his multiple permit applications, in violation of the court's September 2001 order. The Town sought injunctive relief, while landowner asked the court to compel the Town to hold hearings on his most recent application.

¶ 15. In an April 2008 decision, the environmental court denied landowner's motion, explaining that its "May 19, 2004 Order did require the Town to consider Mr. Wood's amendment application, but the Court's order also allowed the Town's municipal planning authorities to make an initial determination of whether any amendment application Mr. Wood submitted was complete." The court noted that "the issue of whether Mr. Wood's development applications required the assistance and approval of a licensed engineer has been decided," and that its review of the proceedings showed that "to date, Mr. Wood has not yet submitted the appropriate development plans, such that his application plans could be deemed complete." The court reiterated that "[u]ntil Mr. Wood submits a complete application, with the appropriate parts of the application prepared by a Vermont-licensed engineer, the Town was within its authority to deem Mr. Wood's plans incomplete."

¶ 16. At the same time, the court granted the Town's motion for contempt, concluding that "Mr. Wood performed construction activities on the Hartford Diner project site after the expiration of Permit #99-1180 and without any other permitting authority," in violation of the April 2006 order that stayed "construction activities not authorized by Permit #99-1180."

¶ 17. Landowner sought reconsideration of the court's decision, insisting that the Town was not complying with the court's earlier orders. In denying the motion, the court explained once again that its May 2004 order had explicitly allowed the Town to consider the completeness of any application filed by landowner, and that the Town's refusal to address the merits of landowner's applications to date "was not contemptuous, because Mr. Wood had failed to file a complete application."

¶ 18. The court next revisited this dispute in June 2009, when it distilled landowner's forty-nine questions to "a straightforward and singular one: Were [the Woods] entitled to a certificate of

occupancy ("CO") when Mr. Wood applied for one on March 7, 2007?" The court concluded that they were not because it was "indisputable" that the project in question "had not been completed in accordance with Permit #99-1180."

¶ 19. In a July 2011 order, the environmental court denied landowner's motion that appeared to request relief under Rule 60(b)(6) from either or both of the court's earlier orders issued in September 2001 and June 2009. The court responded as follows:

> The current docket is just the latest chapter in an unusually long and tortured history of litigation between [Mr. Wood] and the Town. [Mr. Wood] now appears to argue that the previous decisions described above are in opposition to each other and that, thus, one of them must be reopened. We find the Court's prior rulings to be clear and to not evidence the contradiction that [Mr. Wood] suggests.

## II.

¶ 20. The most recent litigation began when the Town served the Woods on March 19, 2010 with an NOV based on a failure to construct the retaining wall in conformance with Permit #99-1180. The NOV advised that landowner could cure the violation by verifying within seven days that landowner would submit a complete application on or before May 24, 2010 to bring the property into compliance with the town zoning regulations. The application would have to include: (1) a slope stabilization plan prepared by a Vermont-licensed engineer; (2) certification from a licensed engineer of the wall's design, structural stability, and actual construction if landowner intended to keep the existing retaining wall as currently constructed; and (3) a site plan prepared by a Vermont-licensed engineer if a site-plan approval or conditional-use approval would be necessary for his plans.

¶ 21. In response, landowner submitted separate applications to the town zoning administrator concerning the Club Parcel and the Diner Parcel. The application concerning the Club Parcel sought a permit for the retaining wall; the application concerning the Diner Parcel sought approval to construct a single-family dwelling on the Diner Parcel.

¶ 22. In separate letters sent approximately two weeks apart, the zoning administrator returned the applications as incomplete.

Regarding the Club Parcel, the zoning administrator noted that because the existing retaining wall was located on both properties, any application "must include the wall in its entirety." The letter further stated that an application must include, among other things, a slope stabilization plan prepared by a Vermont-licensed engineer on the design, structural stability, and construction of the existing retaining wall. Regarding the Diner Parcel, the zoning administrator noted that the proposal relies upon the retaining wall that was not built in accordance with its permit. The letter stated that an application seeking a permit for the retaining wall must include a design plan, slope stabilization plan, and certification from a Vermont-licensed engineer. Landowner appealed those decisions to the ZBA. In July 2010, the ZBA upheld the zoning administrator's determinations.

¶ 23. The Town then commenced an enforcement action in January 2011 based on landowner's failure to construct the retaining wall as designed and permitted and his conducting other unpermitted development on the properties. The environmental court consolidated the enforcement action with landowner's appeals from the ZBA's decisions upholding the incompleteness of his most recent applications. The court's three-day evidentiary hearing included a site visit. The court rendered its decision on March 27, 2012.

¶ 24. With respect to the Town's enforcement action, the court found that it was "beyond dispute," as established in at least four of its prior orders and the evidence presented at trial, that landowner "constructed the retaining wall on the Diner and Club Parcels in disregard of both the engineered design the Woods submitted in support of their original application and the permit that issued in reliance on their plans and representations." The court found that following the September 2001 environmental court order, landowner "chose to construct a retaining wall . . . in a manner not in conformance with the Permit #99-1180 specifications and without first obtaining an amended or new permit to authorize the wall as actually constructed." The court concluded that the wall, as constructed by landowner, deviated in at least eleven material ways from the wall designed by his engineer and authorized by Permit #99-1180. The court further found that "[t]hese deviations from the engineered design create the risk that the wall as constructed is less stable than it would be if it had been constructed in accordance with Permit #99-1180." The court

said it would be "difficult . . . to overstate the gravity of [Mr. Wood]'s actions," noting that "[t]he failure of this wall, were it to occur, could seriously injure or kill people in the path of falling debris."

¶ 25. In so ruling, the court rejected landowner's reliance upon a letter from his engineer that purported to certify that the wall as built conformed to the terms of the permit and would function as designed. The court found that landowner did not retain his engineer to inspect the wall during construction and further failed to make the necessary arrangements during the construction of the wall to ensure that his engineer would have the information necessary to certify that it had been constructed in accordance with the approved design. Rather, landowner "directed his engineer to complete his certifications concerning the retaining wall by relying only upon the engineer's brief site visit and [Mr. Wood's] off-site representations." For these reasons, the court found his "engineer's testimony and written certifications not credible and not relevant to the material factual issue: whether [Mr. Wood] constructed the retaining wall in conformance with Permit #99-1180."

¶ 26. The court further rejected, for lack of a "factual foundation," landowner's new assertion that he had actually built three retaining walls rather than one, so that each wall should be evaluated separately. In so arguing, landowner sought to subject the different portions of the wall to different zoning regulations because the wall crossed two zoning districts.

¶ 27. As for issues concerning development on the property not directly associated with the retaining wall, the court rejected as not credible landowner's claim that his ongoing activities associated with the building on the Club Parcel entitled him to preexisting nonconforming use status with respect to that lot. The court cited substantial evidence to support the Town's position that any preexisting nonconforming use had been abandoned.

¶ 28. The trial court concluded that landowner had "committed serious zoning violations . . . after repeated notices and demands from the Town that he cease his non-compliant construction"; that he continued the construction of his nonconforming retaining wall and building long after receiving the Town's various notices; and that he had "refused to cure the deficiencies" when confronted with his noncompliance. The court accordingly ordered landowner "to either contract with a third party to remove the offending wall

or remove the wall himself." Further, the court required land-owner to pay a fine of $100 per day from the date of the March 2010 NOV, resulting in a total fine of $51,300.

¶ 29. With respect to landowner's appeal of the ZBA's conclusion that his applications for a new permit for the wall and other development were incomplete, the court acknowledged landowner's frustration in not being able to get the Town to address his repeated applications to develop the subject property. The court found, however, that landowner's construction of a dangerous unpermitted retaining wall "was the cause of the frustrations he . . . faced when attempting to secure permits for future development of his parcels." The court deemed reasonable the Town's requirements that landowner "include in any subsequent permit applications the design and construction details for the as-built or to-be-modified retaining wall, certified by an engineer as required under the [Town's Zoning] Regulations, before those applications could be considered complete." The court found that, despite the Town's reasonable requirements, landowner over the years in his multiple applications had "not provided engineering details indicating either the integrity of the wall as constructed or a plan for modifying his wall." Accordingly, the court affirmed the Town's determination that landowner's two most recent applications were incomplete, insofar as they provided none of the required certifications and "no details of the wall he actually constructed nor of the corrections or modifications he intended to complete to bring his wall into compliance with the Regulations."

### III.

¶ 30. Landowner raises at least thirteen claims of error on appeal. Most of landowner's arguments fall within one of the following general arguments: (1) the retaining wall was built in conformity with the 1999 permit as certified by landowner's engineer; (2) a permit is not actually required to develop the subject property because the Club Parcel has a grandfathered preexisting nonconforming use and no permit is required for the retaining wall under the applicable town zoning regulations; and (3) his most recent permit applications were complete and should have been considered by the Town on their merits.

¶ 31. The environmental court definitively rejected the first argument — that the wall as built does, in fact, conform with the 1999 permit — in its 2001 and 2009 decisions. Landowner

conceded as much at oral argument. He cannot relitigate those previously resolved issues now. Second, the record supports the environmental court's findings and conclusions that the Club Parcel had no grandfathered preexisting nonconforming use and that there is only one retaining wall at issue for which a permit is required. Third, the record supports the environmental court's conclusion that landowner's most recent permit applications were incomplete — for the same reasons as his prior permit applications were deemed incomplete. The landowner's arguments on appeal echo the arguments rejected by the environmental court on multiple occasions: he essentially contends that the Town cannot require the professionally engineered plans for his proposed permit that it has requested, and that he has, in any event, supplied sufficient engineering support for the applications. The arguments fail on appeal for the same reasons they failed multiple times below.

¶ 32. We consider each of landowner's thirteen specific claims of error in turn. Landowner first challenges the environmental court's finding that the Woods had abandoned any preexisting nonconforming use of the Club Parcel for 180 days so that landowner was required to apply for and receive a new zoning permit if he wished to resume a nonconforming use. At trial, as a partial defense to the Town's enforcement action, landowner asserted that the building on the Club Parcel had been continuously used as a private club, thereby entitling the Woods, under the applicable zoning regulations, to continue that preexisting nonconforming use notwithstanding his acknowledgment that, otherwise, the regulations would not permit such a use in the VB District.

¶ 33. Pursuant to Hartford Zoning Regulations, if a nonconforming use is discontinued for more than 180 days, the use "may be resumed only if . . . the Zoning Board finds that the resumed nonconforming use will not adversely affect the surrounding area," and conditional use and plan development approval is also required. Town of Hartford Zoning Regulations § 260-54(C)(3) (2008), http://ecode360.com/13455767 [hereinafter Zoning Regulations]. The regulations provide that "[a] nonconforming use shall be considered discontinued if substantial operation of the nonconforming use of the lot or structures on the lot has not occurred for a continuous period of time." *Id.* § 260-54(C)(7). Factors to be considered in determining if a nonconforming use has been

discontinued include whether necessary permits have been renewed and whether there has been a decrease or termination in the use of utilities, whether the structures on the lot have received normal maintenance, and whether there has been a decrease in traffic to and from the lot. *Id.*

¶ 34. The trial court found that use of the building as a club ceased in the late 1990s; that use of the building had been abandoned on several separate occasions for more than two years; that there is no heat or electricity in the building, and the building's prior connection to the Town wastewater and water supply systems has been disconnected for years; that many windows have been broken by vandals; that landowner neither requested nor received a certificate of occupancy to use the building during the thirteen years he has owned it; that a town official credibly described the building as abandoned; and that landowner's claim that he had continually used the building on the Club Parcel was not credible. If supported by the evidence, these findings are sufficient to support the court's conclusion that use of the building was abandoned for more than 180 days.

¶ 35. We conclude that the court's findings are not clearly erroneous, and are amply supported by the record. See *Mullin v. Phelps*, 162 Vt. 250, 260, 647 A.2d 714, 720 (1994) (stating that trial court's findings are viewed most favorably to prevailing party and will not be disturbed on appeal unless there is no credible evidence to support them, even if they are contradicted by substantial evidence).

¶ 36. The town zoning administrator testified that, as part of their application resulting in Permit #99-1180, the Woods planned to relocate the Club Parcel building to a different location on the parcel and use it as a retail establishment. The zoning administrator further testified that during the ten years that she had been familiar with the site, she never noticed any use of the building. While visiting the site in early 2011, she found a fence blocking the entrance to the building, blacked out and broken windows, and no indication of current or recent use of the property. The town fire marshal testified that a public building permit was required to operate a private club but that there was no record of any such permit being issued for that building, either by the Town or by the Vermont Division of Fire Safety, which had conducted such inspections before 2004. The fire marshal further

testified that he had never seen the building occupied in the last 10 years, and that he drove by it two to three times a week. The utility superintendent for the Town's department of public works testified that there had been no water use in the building since 2001. The Town also submitted an exhibit of utility records into evidence indicating that there had been no electricity use at the building during an eight-month period between October 2003 and June 2004.

¶ 37. In response to this and other evidence of abandonment of the building as a club, landowner testified that he closed down the club every January because it cost too much to heat and that he brought water from home to flush the toilet. On appeal, landowner characterizes the Town's evidence of abandonment as mere "suspicions" rather than "hard evidence" contradicting his testimony that the club has not been abandoned. According to landowner, the lack of heat, electricity, and water in the building does not demonstrate that its use as a private club was abandoned.

■ ¶ 38. On the basis of this record, the court had more than sufficient evidence to conclude that the nonconforming use had been abandoned for more than six months, notwithstanding landowner's testimony to the contrary. See *Concra Corp. v. Andrus*, 141 Vt. 169, 173, 446 A.2d 363, 365 (1982) ("When the evidence is conflicting the credibility of the witnesses, the weight of the evidence, and its persuasive effect are questions for the trier of fact, and its determination must stand if supported by credible evidence even though there may be inconsistencies or substantial evidence to the contrary.").

¶ 39. We find no merit to landowner's further assertion that there can be no abandonment with a valid permit. The Woods never developed the building as allowed under Permit #99-1180, and, in any event, that permit and any rights the Woods had under it expired in March 2007.

■ ¶ 40. Nor do we find any merit to landowner's argument that an extension of their preexisting nonconforming use was granted by operation of law because the town administrator failed to act upon his request for an extension within thirty days. See 24 V.S.A. § 4448(d) ("If the administrative officer fails to act with regard to a *complete* application for a permit within 30 days, whether by issuing a decision or by making a referral to the appropriate municipal panel, a permit shall be deemed issued on

the 31st day." (emphasis added)). Landowner bases this argument on a September 4, 2008 letter in which he stated that he wanted to do work on the Club Parcel building "associated with permit 99-1180" and asked the zoning administrator to "[p]lease forward . . . the necessary applications and the associated fee amount." This letter, unaccompanied by an application fee, was plainly not a complete permit application triggering § 4448(d). Even if it could be considered a complete application, the letter was sent more than six months after Permit #99-1180 expired and landowner did not seek the required conditional use and site plan approval.

¶ 41. In his second and third arguments, landowner repeats his contention, rejected by the environmental court, that no permit or engineer certification is required for any of the walls under the applicable zoning regulations. In this latest round of proceedings, landowner argued for the first time before the environmental court that there are actually three walls — one within the VB District and two within the VR-1 District — and that no permits are required for any of the walls. On appeal, landowner expands on this argument, noting that: (1) the applicable zoning regulations require a permit or engineer certification for retaining walls located within the VR-1 District "only when the distance between the wall and any boundary or easement line is less than twice the height of the wall," Zoning Regulations § 260-28(D); and (2) although retaining walls higher than forty-two inches located within the VB District normally require a permit and engineer certification, id., the Town's zoning regulations also provide that if at the time a zoning district boundary is adopted it divides a lot, "the regulations for the less restricted part of such lot shall extend 30 feet into the more restricted part, provided the lot has frontage on a street in the less restricted district." Zoning Regulations § 260-22(C). According to landowner, no permit or engineer certification is needed for any of the walls because the distance between the two walls in the VR-1 District and the boundary or easement line is less than twice the height of the walls, and "[t]he effect of this is to make any restrictions on the Village Business District side of the Wood property a non-issue, if one remains."

¶ 42. The superior court rejected out of hand this attempt to circumvent the permit requirement. The court described landowner's claim that he had built three walls as "unfounded." The court

noted that none of landowner's permit applications provided design details for multiple or alternate walls, that "the actual wall as constructed is clearly a single wall," and that the Town's enforcement action was premised upon its contention that landowner had not constructed the retaining wall in conformance with Permit #99-1180. These findings are supported by the record. Indeed, landowner's own engineer acknowledged at trial that, notwithstanding landowner's characterization of the wall as three walls, the wall "was designed as one wall." None of the surveys, apart from the one submitted by landowner at trial and discredited by the court, indicate separate walls. During the prior proceedings in which the court concluded on multiple occasions that it had made a final determination that engineer certification was needed for the wall, landowner never argued that there were in fact three walls.

¶ 43. Landowner cites as "proof" of the existence of three walls the use of the word "walls" in Permit #99-1180 itself, occasionally in environmental court decisions, and most particularly, in a September 1999 letter from an engineer reviewing the wall design on behalf of the Town. According to landowner, the Town "has just now shifted to calling this a single wall."

¶ 44. The opposite is true. It is landowner who has only recently asserted that there are three walls rather than one wall. References to the word "walls" in past decisions or documents does not demonstrate that there are actually three walls but rather has to do with the fact that the one wall is made up of individual concrete slab sections. Permit #99-1180 states that the engineer must certify that "the concrete slab walls" were constructed as designed, but there is no indication in the application that more than one wall was intended. There are two September 1999 letters from the town engineer. The first one on September 24 indicates that the engineering firm "ha[s] reviewed the two dry laid retaining wall section sheets." The second letter written on September 28, upon which landowner apparently relies, states that the firm has "briefly reviewed the two dry-laid concrete slab wall sections," and then follows up in a later paragraph by stating that its "review is only of the concrete slab wall." In short, there is no basis to disturb the environmental court's finding that there is and always was only one wall.

¶ 45. Moreover, the record amply supports the environmental court's finding that the distance from the wall to a boundary line

and the height of the wall are such that a permit is required, even in the VR-1 District, pursuant to Zoning Regulations § 260-28(D). Landowner's own survey situates that part of the wall landowner calls "Wall A" between five and sixteen feet of the West Hill Road right of way and notes that Wall A has a maximum height of thirty-two feet. The record clearly supports the conclusion that the distance from the wall to the West Hill Road right of way is far less than twice the height of the wall.

¶ 46. Landowner's fourth argument is that even if a permit and engineer certification are required for the retaining wall, an independent review by a town-appointed or approved engineer is not required. The ZBA stated in one of the orders upheld in the environmental court's March 2012 decision that, pursuant to § 260-51 of the Zoning Regulations, independent technical review of the retaining wall before issuance of a new permit is "reasonable and necessary given the wall was not built in accordance with its permit, the height of the wall, its proximity to a residential lot and public road, and the fact that the wall supports two structures." Landowner does not contend that such a condition is unauthorized by the applicable zoning regulations; rather, he appears to argue that the condition cannot or should not be imposed now because Permit #99-1180 and a 2006 environmental court decision did not require independent engineer certification.

¶ 47. This argument has no merit. Permit #99-1180 expired in 2007. For its part, the environmental court emphasized in both the March 2012 decision and earlier decisions the significance of safety concerns posed by the retaining wall and thus the need for certification and site plan review by a Vermont-licensed engineer. Landowner has not demonstrated any bases for us to overrule the decision to require independent engineer certification in this instance.

¶ 48. Landowner's fifth argument is that even if independent review by a town-appointed or approved engineer is required, a town-appointed engineer has already approved the retaining wall. In making this argument, landowner relies upon a September 28, 1999 letter from an engineer who reviewed the original retaining wall design for the Town. The letter states in relevant part that after "briefly review[ing] the two dry-laid concrete slab wall sections" and "based on previous calculations and our own analysis for the previous dry-laid stone wall, we think this wall probably

has a reasonable Factor of Safety against failure." The letter also states, however, that the engineer of record "should make certain that this is so" and "should monitor the construction sufficiently close so that he is willing" to "certify that the concrete slab walls were constructed in accordance with the design." As the environmental court found, the engineer of record did not monitor construction of the wall, and the wall was not constructed in accordance with the design as approved by Permit #99-1180. Landowner's suggestion that the town-appointed engineer's input regarding the *design* of the wall satisfies the independent review called for by the ZBA misses the fact that the issue here is not whether the design of the wall as permitted is safe or compliant. The issue in this case is whether the wall landowner actually constructed complies with the design requirements of the permit — a determination no town-appointed engineer could possibly have made in 1999, before construction on the wall even began.

¶ 49. Landowner's sixth argument is that the town zoning provision allowing for the discretionary assessment of the cost of an independent technical review of permit applications upon a finding that such review would assist in understanding or evaluating the information submitted with the applications fails to provide adequate standards as to what is expected from a landowner. See *In re JAM Golf, LLC*, 2008 VT 110, ¶ 13, 185 Vt. 201, 969 A.2d 47 (declining to enforce standardless ordinance requiring landowner to protect important wildlife habitat); see also 24 V.S.A. § 4440(d) (allowing municipalities to "establish procedures and standards for requiring an applicant to pay for reasonable costs of an independent technical review of the application"). This claim of error is not ripe in that there has not been any assessment of costs upon landowner pursuant to the allegedly offensive provision. See *In re 232511 Invs., Ltd.*, 2006 VT 27, ¶ 19, 179 Vt. 409, 898 A.2d 109 ("We must have an actual case or controversy before us to render a decision.").

¶ 50. Landowner's seventh argument weaves together various arguments noted and rejected above: the Town's NOV was inappropriate because he was not required to get a permit for the wall; in any event he provided evidence of an engineer's approval of the design and construction of the wall as built; and the Town had not yet acted on his pending application with respect to a private dwelling on the Diner Lot. The Town did act on landowner's applications by rejecting them as incomplete; the trial court

was well within its discretion in rejecting the credibility of the landowner's engineer's certification, and, even with a certification, the landowner's application did not satisfy all of the necessary requirements; and the wall was subject to the Town's permitting requirements on account of its height and proximity to a boundary.

¶ 51. Landowner's eighth argument returns to the question of what design was actually lawfully approved in Permit #99-1180. This argument has been addressed previously. The environmental court's 2001 order concluded that the design approved by the permit requires a dry-laid sloping concrete slab wall, with slabs at least ten inches thick, sawed, not hammered, and having maintained their integrity during removal, with steel removed prior to slab placement if another slab will bear on it. The permit described by the environmental court in that order is the unappealed permit that remained in effect until it expired in 2007. Landowner cannot now, more than a decade later, argue that, in fact, the design approved was something different from that identified and described by the environmental court in 2001, and repeated in multiple cases thereafter.

¶ 52. In his ninth argument, landowner asserts that the environmental court lacked jurisdiction to find that he constructed the wall in part on Town property. He cites two environmental court decisions to support this argument. Landowner's tenth argument appears to be related. Landowner states that the Town wants this Court to find that he trespassed on its property, and then suggests that we must reject such a finding because in *Town of Hartford v. Wood*, 171 Vt. 668, 769 A.2d 1303 (2001) (unpub. table decision), we ruled that a certain survey was the true and accurate survey of the property. Neither argument provides a basis for us to disturb the environmental court's decision. The court did not adjudicate the parties' property rights but rather stated only that one of the many ways that the retaining wall, as built, differed from its design was that it appeared to be built in part on adjoining land owned by the Town and others. Landowner's citation is to an appeal listed in a table of memoranda decisions at the end of volume 171 of the Vermont Reports. This Court made no ruling as to the accuracy of any survey in that appeal, which was dismissed as untimely filed on January 3, 2001. Moreover, the Town is not seeking in the current appeal a ruling from this Court that landowner trespassed on its property.

¶ 53. In his eleventh and twelfth arguments, landowner contends that he did not willfully violate the Town's zoning laws, and that the fine imposed by the environmental court was unwarranted and punitive. He states that he merely exercised his right to appeal the Town's decisions, that he honestly believed that the Town had approved a permit for him to build the wall, and that the Town initiated its enforcement action against him merely because he had the audacity to refuse to do what it wanted him to do.

¶ 54. We find no merit to these arguments. Neither the environmental court's multiple decisions over the years nor the record in this case supports landowner's claims that the Town engaged in a personal vendetta against him. Rather, the record, including the court's findings, supports the court's conclusions that the retaining wall was not constructed in accordance with its design specifications or Permit #99-1180, that the Town reasonably required later permit applications to include design and construction details certified by an engineer to assure the safety of the structure, and that landowner failed to do that.

¶ 55. The environmental court explained that a $100 per day fine over the period of the violation was warranted because of landowner's "persistent avoidance of his obligations to abide by Permit #99-1180 and the applicable Regulations," which caused the Town considerable expense in enforcing its regulations. Landowner has failed to demonstrate an abuse of discretion as to either the fine imposed or the injunctive relief granted by the court. See *Town of Hinesburg v. Dunkling*, 167 Vt. 514, 527-28, 711 A.2d 1163, 1171 (1998) (concluding that imposing fines "to reimburse towns for the cost of enforcement is contemplated by the statute and is rationally related to the damages suffered from landowner's violation of Town's bylaw"); *Town of Sherburne v. Carpenter*, 155 Vt. 126, 129, 582 A.2d 145, 148 (1990) (stating that where statute authorizes injunctive relief, municipality need not show irreparable harm but rather only violation of ordinance to obtain such relief).

¶ 56. In his final specific claim of error, landowner argues that the environmental court decision being appealed is inconsistent with prior decisions issued by that court in 2001, 2008, and 2009. Rather than explicitly state how that is so, landowner lists a hodgepodge of claims, mostly reasserting earlier claims of error that we have already rejected or challenging findings that are not

critical to the environmental court's ultimate decision or the instant appeal. Upon careful review of the record, we see no material inconsistencies in the environmental court's decisions over the years regarding the parties' ongoing dispute, and we find no basis to disturb the court's March 27, 2012 decision granting the Town injunctive and monetary relief.

¶ 57. Although not expressly itemized as a claim of error, a recurrent theme throughout landowner's brief involves the "certification" by engineer John Stevens that the wall as built complied with the permit or, in the alternative, satisfies the requirement for expert certification of the wall as built. Although he purported to certify that the wall as constructed complied with the 1999. permit, the engineer testified at the hearing that at the time he issued that certification he had "no idea" what was approved in Permit #99-1180, and that he included that language notwithstanding his lack of direct knowledge because landowner requested it. The engineer testified that he relied on Mr. Wood's representations in determining the safety of the wall as-built. In particular, his own opinions relied exclusively on landowner's representations to him concerning the quality of the subgrade preparation, the composition of the backfill behind the wall, the composition of the foundation key to the wall, the installation of geotextile fabric over the back face of the wall, the selection of appropriate slabs whose structural integrity was not compromised, and landowner's qualifications to direct an undertaking of this magnitude. In fact, the engineer testified that the red lines on the survey denoting the location of the wall and the zoning district boundary breaks, which bore a typed certification by the expert, were actually inscribed by landowner; the engineer did not make any measurements of the wall himself in connection with preparing his certification but instead relied on what landowner told him.

¶ 58. Moreover, the engineer's testimony at the hearing below concerning his observation of the wall during the construction process differed significantly from his deposition testimony. Even by his trial testimony, his observations of the wall while under construction were minimal — he did not observe any actual construction taking place on the wall, and he did not purport to have any basis for offering an opinion as to whether landowner followed good construction practices. To the extent that landowner relies in any way, shape, or form, for any purpose, on the purported certification of this engineer of the safety or compliance

of the wall as built, the environmental court was well within its discretion in rejecting landowner's claims.

*Affirmed.*