*Hallsmith v. City of Montpelier*, No. 32-1-14 Wncv (Toor, J., Aug. 20, 2014).

[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

VERMONT SUPERIOR COURT
WASHINGTON UNIT
CIVIL DIVISION

---

GWENDOLYN HALLSMITH,
  Petitioner

  v.                                                  Docket No. 32-1-14 Wncv

CITY OF MONTPELIER, et al.
  Respondents

---

RULING ON RULE 75 PETITION

Petitioner Gwendolyn Hallsmith seeks Rule 75 review of the termination of her employment as Director of Planning and Community Development with the City of Montpelier. Her employment was protected by a "justifiable cause" provision in the City's personnel policy. She claims that the City lacked justifiable cause to terminate her employment, that the City Manager's termination decision usurped the City Council's exclusive termination authority, and that the manner by which the termination occurred violated her federal constitutional right to due process.[1] The City argues that Hallsmith's acrimonious and insubordinate behavior gave it justifiable cause for termination. The City also argues that the City Manager had authority to make the termination decision, and that any right of Hallsmith to due process is satisfied by this lawsuit and/or a potential breach of contract lawsuit.

I. Standard of Review

The Vermont Supreme Court has generally described Rule 75 review as follows:

[T]he relief available under Rule 75 represents 'the modern equivalent of extraordinary relief by mandamus or certiorari.' The purpose of mandamus is

---

[1] Hallsmith's claims are asserted in her original petition, a first motion to amend the petition (which already has been granted), and a second motion to amend that the court now grants. The City's motion to dismiss the second motion to amend is denied.

> generally to require a public official or body to perform a simple ministerial duty imposed by law . . . . The purpose of certiorari is to review judicial or quasi-judicial action of a lower court or tribunal in regard 'to substantial questions of law affecting the merits of the case.' Under either writ, the standard of review is 'necessarily narrow.' [The petitioner has the burden of proving] a compelling indication of error.

Ahern v. Mackey, 2007 VT 27, ¶ 8, 181 Vt. 599 (citations omitted). The City's determination of justifiable cause was quasi-judicial, rather than ministerial, in nature and thus falls under certiorari. Both the due process issue and the City Manager's authority present substantial questions of law within the scope of certiorari review.

## II. The City Manager's Authority

Hallsmith's employment was terminated by the City Manager. She claims that, under 24 V.S.A. § 4448(a), the City Council had exclusive authority to remove her from office. Section 4448 provides general authority for the appointment of an "administrative officer." 24 V.S.A. § 4448(a). The administrative officer referred to is the one who issues or denies land use permits and is frequently referred to as the "zoning administrator." Id. § 4448(c), (d); In re Wood NOV & Permit Applications, 2013 VT 40, ¶ 40, 194 Vt. 190. Hallsmith's duties evidently included those of the City's zoning administrator. The City argues, however, that its charter vests removal authority in the City Manager and the charter provisions prevail over 24 V.S.A. § 4448(a).

The City of Montpelier Charter gives the City Manager "authority to make appointments and removals as provided in this chapter." 24 App. ch. 5 § 1006(c). Such appointments expressly include the City's zoning administrator. Id. § 1007. In conjunction with that appointment authority, the most reasonable reading of section 1009 is that it vests related removal authority in the City Manager. Id. § 1009. The City Council is expressly barred from interfering in the City Manager's appointments or removals. Id. These provisions conflict with the legislative body's removal authority under 24 V.S.A. § 4448(a).

2

"Whether the charter or a generally applicable state statute controls is a matter of statutory construction." City of Burlington v. Fairpoint Communications, Inc., 2009 VT 59, ¶ 11, 186 Vt. 332. Here, the City's charter provisions are more specific than the statute. Each controls the same subject matter, but the charter provisions apply only to the City. The statute applies generally to all municipal legislative bodies. Under principles of statutory construction, the more specific charter controls. *See* Town of Brattleboro v. Garfield, 2006 VT 56, ¶ 10, 180 Vt. 90. The City Manager did not lack authority to make the termination decision.

### III.  Due Process

#### A.  The Facts

The record shows that by early November 2013 the City Manager had decided to fire Hallsmith.  Hallsmith was protected from any disciplinary action by a "justifiable cause" provision of the City's personnel policy.  City of Montpelier Personnel Plan § 2-719(a).  The City Manager notified Hallsmith of the reasons for his decision and offered her the opportunity to meet with him prior to termination.  Hallsmith, represented by counsel, met with the City Manager to oppose her termination.  He was not persuaded, and she was terminated.

Hallsmith then filed a grievance pursuant to the personnel policy.  *See* id. § 2-720(a). The grievance procedure includes the following:

> The method and manner of conducting a hearing relative to grievances shall be at the discretion of the City Manager.
>
> The employee, while appearing before the City Manager [or designee], has the right to be represented by counsel and to present any material, witnesses or evidence helpful to the employee's case.  However, the administration has similar rights.  The decision of the City Manager shall be final.

Id. § 2-720(a)(4).  The City Manager appointed the Assistant City Manager to conduct the hearing.  Prior to the hearing, the Assistant City Manager was fully aware of the reasons for

3

terminating Hallsmith and agreed with the decision to do so.

Hallsmith appeared pro se at the hearing. She was not permitted to cross-examine the City's only witness, the City Manager. The City Manager also was not permitted to cross-examine Hallsmith or Hallsmith's witnesses. The City's attorney was present at the hearing, ostensibly to advise the Assistant City Manager in her adjudicative capacity rather than to represent the City Manager or the City's interests. However, he questioned Hallsmith and her witnesses extensively.

At the beginning of the hearing, Hallsmith objected to the inability to cross-examine witnesses. At the end of the hearing, Hallsmith objected that the Assistant City Manager, despite her good intentions, was not an impartial adjudicator. In a written decision, the Assistant City Manager found justifiable cause for Hallsmith's termination.

## B.  Analysis

The parties agree that the justifiable cause provision in the personnel policy gave Hallsmith a property interest in continued employment protected by the Due Process Clause of the Fourteenth Amendment. They also agree that the City was required to give Hallsmith pre-termination notice of the reason for termination and an informal opportunity to oppose it, and that it did so. They further agree that Hallsmith was entitled to a post-termination opportunity to challenge her dismissal that fully complied with her due process rights. There the agreement ends. Hallsmith argues that the post-termination grievance hearing needed to comply with her due process rights and did not. The City argues that a judicial remedy is sufficient.

Two basic components of due process are the ability to confront adverse witnesses and an impartial adjudicator. *See* In re Green Mountain Corp., 2012 VT 89, ¶ 95, 192 Vt. 429 (Zonay, Supr. J., concurring in part and dissenting in part) ("It is not surprising then, that '[i]n almost

every setting where important decisions turn on questions of fact, due process requires an opportunity to confront and cross-examine adverse witnesses.'" (*quoting* Goldberg v. Kelly, 397 U.S. 254, 269 (1970))); Secretary, Agency of Natural Resources v. Upper Valley Regional Landfill Corp., 167 Vt. 228, 234 (1997) ("A fair trial before an impartial decisionmaker is a basic requirement of due process, applicable to administrative agencies as well as to the courts."); Workman v. Jordan, 32 F.3d 475, 480 (10th Cir. 1994) ("A 'full posttermination hearing' is understood to include the right to representation by an attorney and the right to cross-examine adverse witnesses." (citation omitted)). The City does not dispute that Hallsmith was entitled to such protections at a post-termination hearing.

The pre-termination hearing in this case is known as a Loudermill hearing after Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532 (1985). Ordinarily, the government cannot deprive a person of a constitutionally protected property interest without first providing notice and an opportunity for hearing that complies with due process. Id. at 542. In the public employment context, however, the employee's interest in continued employment conflicts with the government's interest in the "expeditious removal of unsatisfactory employees." Id. at 543. The public employer may offer the employee a pre-termination hearing that fully complies with due process. As an alternative, under Loudermill, the employer may offer the employee a less "elaborate" hearing pre-termination, an "initial check against mistaken decisions." Id. at 545. That informal hearing, however, must be followed by a post-termination hearing that fully complies with due process. Of necessity, the rule permitting the informal pre-termination hearing "rests in part" on the availability of a reasonably prompt "full post-termination hearing," as was available in Loudermill. Id. at 546.

The City does not argue that the post-termination hearing in this case complied with

Hallsmith's post-termination due process rights.[2]  Instead, it argues that the City did not need to provide a hearing because Hallsmith had access to a judicial remedy: a breach of contract claim or this Rule 75 proceeding.

The Seventh Circuit has comprehensively addressed and rejected the same argument. Baird v. Bd. of Educ. for Warren Community Unit Sch. Dist. No. 205, 389 F.3d 685 (7th Cir. 2004).  Specifically, the Baird court addressed "the question whether a state breach of contract action provides adequate due process to protect the rights of a school superintendent facing termination, whose pre-termination hearing fell short of due process requirements."  Id. at 688. In a well-reasoned decision, the court answered that question in the negative.  Because its analysis is highly persuasive, and the facts here are analogous, the court adopts the Baird rationale for purposes of this case.

The Baird analysis proceeds from the often reiterated observation that "[t]here can be no due process without the opportunity to be heard *at a meaningful time* and in a meaningful manner."  Id. at 690 (citation and quotation marks omitted; emphasis added).  Loudermill allows termination after an informal hearing, as in this case, only where the formal hearing follows promptly.   In Loudermill, the public employees were entitled to prompt post-deprivation hearings before the Ohio Personnel Board.  Id.  In Lujan v. G & G Fire Sprinklers, Inc., 532 U.S. 189 (2001), relied upon by the City here, the U.S. Supreme Court explained that a post-deprivation breach of contract claim adequately protects due process *when the interest is contractual only*.   The right to pursue a *present entitlement* such as gainful employment,

_____

[2] Consequently, the court does not need to rule on that issue as a general matter.  Specifically, the court does not rule on the issue of whether the Assistant City Manager was an impartial adjudicator.  The record is clear that, though she subjectively believed that she could be fair, she was aware of the facts and agreed with the termination decision before conducting the hearing.  Certainly the better practice would be to select a decisionmaker who was uninvolved with and detached from the termination altogether.  Courts do not rigidly so require in all circumstances, however. *See, e.g.*, Fullerton v. City of Mercer,  No. F054003, 2009 WL 840212, at *11 (Calif. Ct. App. Apr. 1, 2009) (unpub.) (holding city manager's participation in termination decision sufficiently remote that he was adequately impartial decisionmaker for purposes of post-termination hearing).

6

however, is distinguishable from a mere deprivation of payment on a contract. <u>Baird</u>, 389 F.3d at 691. The distinction is palpable:

> The postdeprivation remedies appropriate to the deprivation of an interest to which there is a present entitlement are characterized by promptness and by the ability to restore the claimant to possession. The underlying concept seems to be that the remedy is available before the loss has become complete and irrevocable.

<u>Id</u>. at 692. So is the effect in a case such as this:

> A state law breach of contract action is not an adequate post-termination remedy for a terminated employee who possesses a present entitlement and who has been afforded only a limited pre-termination hearing. While it does provide a species of due process, a lawsuit does not satisfy the requirement of promptness, which is essential if the employee is to pursue time-sensitive remedies such as reinstatement. While there is no specific time frame within which a hearing must be held to qualify as "prompt," lack of a speedy resolution to proceedings may result in a denial of due process. Similarly, while there is no automatic right to reinstatement, it is "normally an integral part of the remedy for a constitutionally impermissible employment action." Further, as the Sixth Circuit has noted, "employment, especially in a career such as education, is more than a way to make money; it is a profession with significant non-monetary rewards," and consequently money damages may be a "hollow victory." Thus, when a public employee terminated for cause has a present entitlement, and when the only available post-termination remedy is the opportunity to bring a state breach of contract suit, the pre-termination hearing to which such an employee is entitled must fully satisfy the due process requirements of confrontation and cross-examination in addition to the minimal <u>Loudermill</u> requirements of notice and an opportunity to be heard.

<u>Id</u>. at 692. This is exactly the case here. A breach of contract lawsuit would not have given Hallsmith access to a prompt opportunity for reinstatement. The record is clear that her position with the City provided her with significant "non-monetary rewards." She devoted her free time as well as her work time to the same economic development interests out of personal devotion. *See, e.g.,* Transcript at 215 (testimony of Hallsmith explaining that "this is what I live, breathe, think, do all the time. It always has been, always will be."). Damages following a breach of contract suit might provide some compensation, but to some extent, she would still be left with something of a hollow victory.

7

The court rejects the City's argument that this Rule 75 action adequately provides Hallsmith due process. Certiorari review under Rule 75 at most gives Hallsmith an opportunity to show, on a record developed without due process protections, that there was no evidence in that defective record to support justifiable cause, or that there is a substantial legal reason to vacate the grievance decision. It does not give her any opportunity to present evidence, confront the witnesses against her, or have an impartial adjudicator make the determinative finding and award the relief she really wants, reinstatement and lost wages.

Nevertheless, the City argues that the Second Circuit Court of Appeals has found exactly this type of review sufficient in Article 78 proceedings under New York law. Locurto v. Safir, 264 F.3d 154 (2d Cir. 2001). Article 78 is an expeditious proceeding in New York in which one may raise a certiorari, mandamus, or prohibition claim. N.Y. Civil Practice Law and Rules § 7801. However, Article 78 allows a tenured public employee to contest termination under mandamus (not certiorari) based on "ancient common law principles." Id., Practice Commentaries C7801:6 (*quoting* State Div. of Human Rights on the Complaint of Geraci v. New York State Dep't of Correctional Services, 456 N.Y.S.2d 63, 73 (N.Y. App. Div. 1982)). More importantly, Article 78 permits a petitioner to present evidence, allege that a fact is disputed, and have a trial to resolve it. N.Y. Civil Practice Law and Rules § 7804(h). The Locurto court emphasized the point in noting that Article 78 preserves the public employee's post-deprivation due process rights. Locurto, 264 F.3d at 174 ("An Article 78 proceeding permits a petitioner to submit affidavits and other written evidence, and where a material issue of fact is raised, have a trial of the disputed issue, including constitutional claims."). This Rule 75 proceeding, on the other hand, gives Hallsmith only the most limited opportunity to contest the Assistant City Manager's findings and no opportunity for an evidentiary hearing to establish disputed facts

8

anew. *See, e.g.*, <u>Garbitelli v. Town of Brookfield</u> 2011 VT 122, ¶ 6, 191 Vt. 76 (Rule 75 "review is normally limited to answering legal questions raised by the factual record developed in the administrative proceeding."); <u>Burroughs v. West Windsor Bd. of School Directors</u>, 141 Vt. 234, 237 (1982) (certiorari review such as this "is limited to a review of judicial action by inferior courts and tribunals and confined to substantial questions of law").[3]

Vermont's Rule 75 review plainly does not provide here the same type of review that is available under New York's Article 78. Hallsmith has established that the City violated her right to due process at the post-termination grievance hearing.

### C. Remedy

Hallsmith seeks lost wages and reinstatement. She did not, however, bring a breach of contract action or seek relief under 42 U.S.C. § 1983. Proving the due process violation does not demonstrate that the City lacked justifiable cause for termination. Andrew J. Ruzicho and Louis A. Jacobs, 1 Employment Practices Manual § 7:6 ("[T]he reasons the employer had for an adverse employment action are largely beside the point because due process focuses on the procedure by which the employer deprived the employee of a protected interest.") (WL updated March 2014). Hallsmith does not challenge the adequacy of her pre-termination hearing. She challenged and proved the violation of her due process rights at her post-termination hearing. Under Rule 75, her relief is a new post-termination grievance hearing that fully complies with due process.

### Order

(1)     Hallsmith's motion to amend is granted.

(2)     The City's motion to dismiss is denied.

---

[3] Rule 75 does allow some discretion to take evidence to fill gaps in an agency record, <u>Garbitelli</u> at ¶ 8, and refers to the possibility of a jury trial. However, the former does not have any relevance here, and the court has never been able to understand how the latter would ever apply in such an appellate-style proceeding.

(3)     Hallsmith's Rule 75 petition is granted.

(4)     The Assistant City Manager's grievance decision is vacated.  The City is ordered to provide Hallsmith a new grievance hearing that fully satisfies Hallsmith's due process rights, including her rights to confront adverse witnesses and to an impartial adjudicator.

Dated at Montpelier this 20th day of August 2014.


_____
Helen M. Toor
Superior Court Judge