STATE OF VERMONT

SUPERIOR COURT

ENVIRONMENTAL DIVISION
Docket No. 1-1-11 Vtec &
Docket No. 138-8-10 Vtec

---

**Town of Hartford v. Wood**

**and**

**Wood NOV and Permit Applications**

---

## ENTRY REGARDING MOTION

Title:        Motion for Relief from Judgment Order (Motion 23)

Filer:        Marc Wood

Attorney:  Brice C. Simon

Filed Date: March 5, 2018

Response in Opposition filed on 04/02/2018 by Attorney William F. Ellis
    for the Town of Hartford

Reply in Support of Motion filed on 06/18/2018 by Attorney Brice C. Simon
    for Appellant Marc Wood

Further Response in Opposition filed on 06/28/2018 by Attorney William F. Ellis
    for the Town of Hartford.

**The motion is DENIED.**

Marc Wood's efforts to develop his properties along Vermont Route 14 in the Town of Hartford ("Town") began sometime in 1998. His development on these properties remains incomplete and Mr. Wood and his properties have been the subject of many separate appeals and enforcement actions. Both the parties and this Court have attempted to bring some finality to these combined litigations, but those attempts have thus far been unsuccessful. Due to that long history, we believe it appropriate to provide the following brief history of Mr. Wood's development efforts and the Town's enforcement efforts before we review the pending post-judgment motion in the above referenced dockets.[1]

---

[1] We provided a more complete procedural summary of the various litigations in this Court concerning Mr. Wood's development efforts in an Entry Order issued in response to Mr. Wood's motion for the presiding judge to recuse himself. See Town of Hartford v. Wood & Wood NOV & Permit Appeals, Nos. 1-1-11 Vtec, 138-8-10 Vtec, slip op. at 1–4 (Vt. Super. Ct. Envtl. Div. June 1, 2018) (Durkin, J.).

**Background**

Mr. Wood's properties are located on the southerly side of Vermont Route 14 (a/k/a Maple Street). [2] Prior to Mr. Wood's development efforts, both lots sloped steeply away from the highway, down towards a Town road known as either Mill Hill Road or Ferry Boat Crossing. The property on the other side of that Town road abuts the White River.

Mr. Wood's two parcels are relatively narrow, compared to their length along Maple Street; the difference in elevation from their northern to southern boundaries is about 40 feet.

Mr. Wood applied for a permit to develop the lots in 1998. In order to develop the lots more effectively, Mr. Wood proposed to construct a stone retaining wall along the combined parcels' southern and western boundaries which would be nearly 30 feet at its highest point from base to top of the wall. Mr. Wood then amended his permit application by proposing that concrete slabs, harvested from a nearby interstate highway bridge reconstruction project, would be used instead of stone to construct his proposed retaining wall. His then engineer proposed specifications for the revised retaining wall, including the following, which we included in a 2012 merits decision:

3. The slabs shall be reinforced concrete, obtained from a bridge rehabilitation project with a minimum thickness of 10 inches. Only slabs that have been sawn and have maintained their integrity during removal may be used; hammered slabs are unacceptable. The minimum width of an acceptable slab is 8 feet. . . .. Any fixtures or steel shall be removed prior to slab placement if another slab will bear on it. Transverse joints shall have a width of approximately 2 to 4 inches and filled with pea gravel for drainage purposes. Transverse joints shall be offset at least 3 feet from the joint above and below. Curb or non-curb slabs may be used on the outside face of the wall and only non-curb sections may be used behind the face. Slabs shall be set level or tilted so that the end furthest from the wall face is lower than the front face.

Town of Hartford v. Wood & Wood NOV & Permit Applications, Nos. 138-8-10 Vtec, 1-1-11 Vtec, slip op. at 4 (Vt. Super. Ct. Envtl. Div. Mar. 27, 2012) (hereinafter the "2012 Corrected Merits Decision").

Based upon the design specifications presented by Mr. Wood's engineer, and after the Town had its own engineer review and offer comments upon that design, Mr. Wood's application for a zoning permit for his proposed revised retaining wall was approved on October 14, 1999. That permit became known as Permit #99-1180.

Shortly after Mr. Wood began stockpiling the concrete slabs and constructing the retaining wall, the Town became concerned that Mr. Wood was not constructing the wall as proposed and permitted. After several discussions between the parties did not resolve the Town's concerns, the Town served Mr. Wood with its first notice of alleged zoning violations

---

[2] Mr. Wood is the sole owner of what is referred to as the Diner parcel. At the time of the 2010 litigation, he owned the other parcel, referred to as the Club parcel, jointly with his then wife.

("NOV") and then an enforcement complaint. That litigation resulted in a judgment order in favor of the Town. See Town of Hartford v. Wood, Nos. 72-3-00 Vtec, 91-5-00 Vtec, and 219-5-00 Wrcv (Vt. Envtl. Ct. Sept. 24, 2001) (Wright, J.), *aff'd* Town of Hartford v. Wood, No. 2001-473, 2002 WL 34423566 (unpub. mem.). Several post-judgment motions were then filed, including motions for contempt by the Town and motions to reopen and reconsider by Mr. Wood. The undersigned addressed all post-judgment motions and the matter was re-closed on March 6, 2008.

Several other actions, appeals, and pre- and post- judgment motions have been filed in many dockets, all concerning Mr. Wood's efforts to develop his Maple Street properties, including reconstruction of the partially burnt Diner building.[3] Those matters are procedurally detailed in our Entry Order of June 1, 2018, cited above.

The Town has served Mr. Wood with multiple notices of alleged zoning violations ("NOV") over nearly two decades, all concerning his Maple Street properties. In the proceedings that are the subject of Dockets Nos. 138-8-10 Vtec and 1-1-11 Vtec, Mr. Wood challenged the March 19, 2010 NOV served on him by the Town which detailed how his partially-constructed wall was illegally constructed. The 2010 NOV also addressed how Mr. Wood had begun renovations and other work to the buildings on the Diner and Club Parcels. Docket No 138-8-10 Vtec also concerned Mr. Wood's appeal of two of the Town Zoning Administrator's determinations, affirmed by the Town of Hartford Zoning Board of Adjustment ("ZBA"), that his two 2010 applications were incomplete and should be returned to him without decision. His first application was for further revisions to his concrete slab retaining wall; his second application was to construct a single-family home on the Diner parcel, presumably in place of the partially burnt Diner building, which Mr. Wood had begun to reconstruct without a necessary permit.[4]

Docket No. 1-1-11 Vtec was assigned to the Town's zoning enforcement complaint that was based upon the 2010 NOV.

The Court completed a trial on the coordinated appeals on July 22, 2011. After allowing the parties additional time to file proposed findings of fact and conclusions of law, the Court issued its 23-page Corrected Merits Decision on March 27, 2012, in which it announced its conclusion that Mr. Wood had partially constructed his proposed retaining wall in a non-conforming manner and that he had submitted incomplete permit applications.[5] Concerning the wall, the Court specifically found that:

---

[3] We note that we held Mr. Wood in contempt in separate dockets for continuing to make improvements to the Diner building without a necessary zoning permit. In re Appeal of Wood, Nos. 121-7-03 Vtec & 185-10-04 Vtec (Vt. Envtl. Ct. Apr. 16, 2008) (Durkin, J.). The Court specifically ruled that "Mr. Wood is enjoined from conducting additional unpermitted construction activities on the Hartford Diner project site." Id. at 8.

[4] The undersigned recollects being told that the Diner building was partially destroyed by fire some time prior to Mr. Wood filing his zooming permit application in 1998. There were later representations that the fire to the Diner building occurred in the mid-2000s.

[5] The Court issued its original Merits Decision and Judgment Order on February 22, 2012. The 2012 Corrected Merits Decision and Judgment Order were issued to "remedy certain typographical errors as to dates on pages 11 and 15 and the per-day fine recited on page 19 of the original Merits Decision issued on February 22, 2012. None of

a.  The concrete slabs actually used are by no means uniform in length, width or thickness,[6] as depicted in the engineer's plan (Town Exhibit 7) and as specified in the notes on that plan. Slab thickness varies from seven to ten inches; the length and width varies as well, and many of the slabs have uneven surfaces, resulting in non-uniform stacking.

b.  The transverse (i.e., vertical) joints where the concrete slabs meet are not offset, as directed by the engineer's plans. See Town Exhibit 7 and Town photos admitted as Town Exhibits 27, 29, 31, and 32. This lack of offset compromises the physical integrity of the wall as constructed. Most all of these joints have uneven vertical surfaces.

c.  All of the vertical joints between the stacked slabs are wide and open; the space between parallel stacks of slabs is much wider than the two to four inches specified in the engineer's design, and the pea stone that the design requires to be used to fill the two- to four-inch joints does not appear to have been installed. See Town Exhibit 7.

d.  Most all of the slabs appear to have been hammered, resulting in uneven edges and joints where the slabs abut one another. Few of these vertical ends appear to have been sawn as the engineer required in his plan. See Town Exhibit 7.

e.  The stacked slabs appear to rise in a direct line, nearly ninety degrees from a level plane at the base of the wall. The wall as constructed does not respect the engineer's directive that the face of the wall be angled back into the Parcels, nor does the as-constructed wall respect the engineer's directive that the "[s]labs shall be set level or tilted so that the end furthest from the wall face is lower than the front face" of the wall. Town Exhibit 7 at 1. As a consequence of how the wall was actually constructed, it appears more likely to teeter, and possibly fall, than it would be if constructed as designed.

f.  Appellant offered no certification that the hammered, rather than sawn, concrete slabs maintained their integrity after having been broken apart in such a manner.

g.  The wall as constructed is materially taller in height (by two feet on one end and ten feet on the other) than the wall as designed. The total height of the wall ranges from 10 feet to more than 30 feet.

h.  The wall construction is not yet completed, as Appellant readily admitted. Permit #99-1180 has now expired, however, and the Woods no longer have authority to build the wall as permitted.

---

these corrections affect the substantive Findings, Conclusions or Order." Town of Hartford v. Wood & Wood NOV Appeal & Permit Applications, Nos. 138-8-10 Vtec & 1-1-11 Vtec, slip op. at fn. 1 (Mar. 27, 2012).

[6] See photo of a portion of the wall along the southern boundary, admitted as Town Exhibit 34.

    i.   In addition to failing to complete the wall construction, the Woods have failed to provide an engineer's certification that the wall as constructed (though incomplete) was constructed in compliance with Permit #99-1180.

    j.   The most credible evidence shows that Appellant constructed this wall not wholly on his land, but also on the adjoining land owned by the Town and/or others. See hatched area depicted on Town Exhibit 3(a).

    k.   Models prepared by Appellant and admitted into evidence of the wall as constructed (Appellant Exhibit T) and the wall as designed and approved in Permit #99-1180 (Appellant Exhibit W) fail to show that the wall was constructed as designed. They also do not support Appellant's assertion that the wall as constructed is safer and more secure than the wall as designed.

In summary, the wall as constructed by Appellant materially deviates from the wall as designed by Appellant's engineer, the design that Permit #99-1180 gave Appellant the authority to build.[7]

2012 Corrected Merits Decision at 7.

Concerning Mr. Wood's appeal of the Town's 2010 NOV, the Court concluded that the credible evidence supported the Town's allegations and upheld the NOV. In reaching this legal conclusion, the Court specifically concluded that:

It is difficult for the Court to overstate the gravity of Appellant's actions. He has constructed a wall along, on, and over the boundaries of his property that does not conform with his own design plans. The wall rises at a much steeper vertical angle than his plans require. Appellant's own engineer, when called upon to do so at trial, could not calculate the vertical angle of the wall that Appellant actually constructed. The wall includes hammered concrete slabs of varying length, width, and thickness and with uneven surfaces, the integrity of which has never been verified. The concrete slabs are stacked higher than specified in the design and in a manner so that the vertical joints between the slabs are in line, rather than offset, as directed by Appellant's engineer. The vertical joints are wide and open, larger than the engineer specified, and apparently not filled in by pea stone as required. The weight of the concrete slabs was not estimated at trial but is obviously many tons.

Because the wall was constructed along, on, and over Appellant's boundary line, any failure of the wall may cause it to topple onto adjacent Town properties and highways, and adjacent private properties and homes. Failure of the wall could cause serious property loss and personal injury, including death. The Court

---

[7] This Court reached this same conclusion in In re Wood Certificate of Occupancy Request, Appellant's appeal of the Town's denial of his request for a certificate of occupancy for the wall as constructed. No. 176-8-07 Vtec, slip op. at 2 (Vt. Envtl. Ct. June 10, 2009) (Durkin, J.) (concluding that Marc Wood was not entitled to a certificate of occupancy because "[i]t is indisputable that his project had not been completed in accordance with Permit #99-1180").

is at a loss to recall another zoning violation that has come before it with the potential for such great calamity.

Id. at 16.

As to Mr. Wood's appeals of the determinations that both of his permit applications were incomplete, the Court concluded that:

> Because of the location and height of Appellant's wall, he was required to provide "certification by a professional engineer on [the wall's] design, structural stability, and construction." [Town of Hartford Zoning] Regulations § 260-28(D) (requiring such certification for retaining walls more than 42 inches high). Appellant provided none of these certifications. As is authorized by Regulations § 260-51, the Town employed an engineer to conduct "an independent technical review" of Appellant's application submissions and the wall he actually constructed. That engineer provided the most credible assessment of Appellant's retaining wall and confirmed that Appellant's current applications (both Applications #12-10 and #13-10) fail to provide the necessary certifications and specifications that would ensure that whatever wall Appellant hoped to complete would be safe and in compliance with the Regulations. We conclude that Appellant's Application #12-10 is materially deficient. The Zoning Administrator was obligated to deem this application incomplete and return it to Appellant.

> We reach a similar conclusion as to Application #13-10. Appellant's plans to develop the Diner Parcel for single-family use rely upon the wall that he has already constructed on that Parcel. That wall violates the Regulations and does not comply with Permit #99-1180, which had expired at the time Appellant submitted Application #13-10. When Appellant submitted this application, he failed to provide any of the engineer certifications and design specifications for the wall he had actually built or for the wall as modified by work he intended to complete. As the Zoning Administrator properly concluded, no development may be allowed on the Diner parcel, or either of the Woods' Parcels for that matter, without Appellant first providing the necessary engineering designs and certifications concerning the retaining wall. We conclude that Appellant's Application #13-10 is materially deficient. The Zoning Administrator was obligated to deem this application incomplete and return it to Appellant.

Id. at 20–21.

The Court then turned its analysis to the Town's requests for injunctive relief and penalties in its zoning enforcement action (Docket No. 1-1-11 Vtec). Based upon the credible evidence presented, the Court granted the Town's claims and imposed the following relief:

A. Marc Wood's applications to bring his retaining wall on the Club Parcel into compliance (Application #12-10) and to develop a single-family dwelling on the Diner Parcel (Application #13-10) are incomplete, since neither application includes the necessary engineering details or design specifications for his

retaining wall, either as actually constructed or as proposed, and neither application includes the necessary certifications by a Vermont licensed engineer. We therefore **DEEM BOTH APPLICATIONS INCOMPLETE**.

B. The notice of alleged zoning violations, dated March 19, 2010 and served upon Marc Wood by the Town of Hartford Zoning Administrator, has a sufficient factual and legal foundation and is therefore **UPHELD**. As a consequence of committing the zoning violations evidenced by the 2010 notice of violations, Marc Wood shall pay to the Town of Hartford penalties in the total amount of **$51,300.00**.

C. As a consequence of the zoning violations they committed or allowed to be committed on their Diner and Club Parcels, Marc and Susan Wood are hereby **ORDERED** to immediately cease all construction activities and other development on their Parcels and not begin any development on those Parcels without first consulting with the Town of Hartford Zoning Administrator to determine if a zoning permit is required for their proposed activities. If a permit is necessary, Marc and Susan Wood cannot begin such development without first submitting a complete application for a zoning permit to the Town of Hartford Zoning Administrator or the appropriate municipal panel and receiving the necessary permits. Any future development on these Parcels shall only occur in strict conformity with any issued and outstanding zoning permits.

D. Marc and Susan Wood shall remove the retaining wall located on the Diner and Club Parcels, and all other unauthorized improvements on these Parcels, either themselves or by hiring a qualified third-party contractor to do so. In the event that either Marc or Susan Wood, or the both of them, conduct this removal work themselves, they shall hire a professional engineer, licensed by the State of Vermont, to conduct daily inspections of all the work they conduct. Whether the Woods conduct the removal work themselves, or hire a qualified third-party contractor to do so, they must also hire a Vermont licensed professional engineer to file weekly reports with the Town of Hartford Zoning Administrator, detailing and certifying the removal work conducted each week until such work is complete. Such certifications shall specify the work completed since any prior certification and disclose any material deviations from any engineering plans approved by the Town.

E. Prior to beginning the removal work directed in ¶ D, above, Marc and Susan Wood shall cause a Vermont licensed professional engineer to submit to the Zoning Administrator a plan for the safe removal of the wall and unauthorized improvements on the Diner and Club Parcels as well as a bank stabilization plan that will dictate necessary safety precautions to be taken both during the removal period and after removal. Both of these plans must be submitted, in writing, to the Town of Hartford Zoning Administrator thirty days after the

engineer is selected in accordance with ¶¶ F and G, below.  The removal work directed in ¶ D, above, must be completed in conformance with these plans and cannot commence until thirty (30) days after receipt of the plans by the Zoning Administrator or until the Town approves such plans (whichever date is later), as described in ¶ H, below.

F.   The engineer whom the Woods employs for all of the work directed in ¶¶ D and E, above, is subject to the approval of the Town.  If the parties are unable to agree on the engineer to be employed, each party shall submit the names and resumes of one or more engineers acceptable to them to the Court and the Court will thereafter select the engineer that the Woods shall employ to complete this work.

G.   Marc and Susan Wood shall submit to the Town of Hartford Zoning Administrator the name and resume of the engineer they wish to employ for all of the work directed in ¶¶ D and E, above, within thirty (30) days after the Judgment Order that accompanies this Decision becomes final.  If it wishes to do so, the Town shall then have fifteen (15) days to give written notice to the Woods of its rejection of their engineer.  If the Town provides a timely notice of its rejection of the Woods' engineer, an engineer shall be selected pursuant to ¶ F, above.

H.   The Town shall have thirty (30) days from its receipt, as directed in ¶ E, above, of the engineer's plans to give written notice to Marc and Susan Wood and their engineer of any concerns or objections to such plans.  The lack of such written notice from the Town shall constitute its approval of the plans.  If the Town raises concerns about or objections to the plans, Marc and Susan Wood shall work with the Town to resolve the issues in a timely fashion and to adjust the plans, if necessary, so that the Town is able to approve them.  If the parties are unable to resolve any material disagreement as to the design plans, the parties shall submit their disagreement for resolution by the Court.

I.   The engineer's plans required in ¶ E, above, shall specify a reasonable period of time for the removal and bank stabilization work to begin and be completed.  In the event that the engineer specifies more than sixty (60) days, the engineer must specify the reasons for the delay.

J.   Once all work is completed, Marc and Susan Wood shall employ the engineer to conduct the necessary final site inspections so that the engineer may certify to the Town and this Court that all work necessary for the removal of the retaining wall and unpermitted improvements is complete and the resulting earthen bank is stable.

Id. at 21–23.

Of particular note in these determinations is that the Court concluded that Mr. Wood did not have the capacity to complete the necessary remedial work on his retaining wall without

supervision.  Even though the trial and Merits Decision were completed more than six and a half years ago, the undersigned continues to have a clear recollection of the contentiousness and disparity of the parties' presentations during the 2011 trial.  In his most recent filings, Mr. Wood continues to assert that the prosecution of his zoning violations has "maliciously barred [him] from building on [his property] by a vindictive Town."  Mr. Wood's Motion of V.R.C.P. 60(b) relief from Judgment Order, filed on March 5, 2018, at 2.  Mr. Wood continues to make these accusations, even though the Town's allegations of zoning violations have been found credible by this Court and affirmed by the Supreme Court.  Mr. Wood further asserts that the "Town has had an agenda to prosecute Mr. Wood and habitually deny his permit applications since 1998." Id.  However, it is uncontested that the Town approved his permit application in 1998 and issued Permit #99-1180.  The Town only began its enforcement efforts after Mr. Wood chose to not build his retaining wall as designed by his engineer and approved by the Town.

Mr. and Mrs. Wood appealed this Court's 2012 Corrected Merits Decision and Judgment Order to the Vermont Supreme Court.  The Supreme Court rejected their appeal and affirmed this Court's determinations.  See In re Wood NOV & Permit Applications &Town of Hartford v. Wood, 2013 VT 40, 194 Vt. 190.

The record reveals that Mr. Wood has had great difficulty comprehending the gravity of this Court's final Judgment Order directives, especially concerning the injunctive directives to remove the unpermitted wall, retain engineers to confirm its safe removal, and to cease making unpermitted improvements to the burnt-out Diner building.  On May 30, 2014, the Town filed a motion to enforce the 2012 Corrected Merits Decision and Judgment Order.  In response, Mr. Wood filed a motion for relief under V.R.C.P. Rule 60(b).  The Court granted the Town's motion to enforce and for contempt and denied Mr. Wood's motion for Rule 60 (b) relief.  Town of Harford v. Wood & Wood NOV & Permit Applications, Nos. 138-8-10 Vtec, 1-1-11 Vtec (Aug. 12, 2014).

In its Entry Order denying Mr. Wood's motion for relief, the Court concluded that:

> In his last filing, it appears that Mr. Wood is not seeking "relief" from a prior judgment, but rather has filed his motion in response to the Town's pending motion for contempt.  (Defendants [sic] Response to Towns [sic] Opposition to Defendants [sic] Motion for Relief Under Rule 60(b)(3), filed June 18, 2014.)  To the extent that Mr. Wood intended to file his motion in response to the Town's contempt motion, we will consider it as we rule upon the Town's pending contempt requests.[8]

> To the extent that Mr. Wood filed his pending motion in an effort to be relieved from his responsibility to satisfy the final judgments of this Court, including our 2012 Corrected Decision and Judgment Order, since affirmed by the Vermont Supreme Court, we **DENY** his motion on two grounds.  First, his motion is untimely.  Rule 60(b)(3) requires relief requests, even those based upon allegations of fraud, to be presented to the trial court within one year of the

---

[8] Mr. Wood has also filed a memorandum in opposition to the Town's contempt motion.

judgment. Mr. Wood has waited over two years to seek relief from the judgment for which the Town is now seeking the Court's assistance in compelling Mr. and Mrs. Wood to satisfy.

Second, even if we felt empowered to ignore the one-year limitation of Rule 60(b)(3), we conclude that Mr. Wood has failed to provide sufficient evidence of the fraud he alleges. His filings are replete with conclusionary statements, but no specific factual allegations. While he protests the Town's response to his Rule 60(b)(3) motion, we cannot understand how to read his protestations, other than as an attempt to have this Court absolve him and his Co-Defendant from satisfying a two-year old judgment that long ago became final. In the absence of persuasive facts to support his allegations of fraud, we cannot grant his request.

Mr. Wood appears to be tormented by the reality that he now faces: he fought a decade-long litigation battle with the Town. The courts, including the Vermont Supreme Court, found the Town's arguments more credible and persuasive than his. As a consequence, he must satisfy the final judgment rendered against him. The outstanding legal issue is no longer whether that judgment should have been entered against them, but rather how he and Mrs. Wood will (voluntarily or by subsequent order of this Court) satisfy that judgment.

Id. at 1–2.

In granting the Town's motion to enforce the 2012 Corrected Merits Decision and Judgment Order, and seeking an order of contempt, the Court concluded that Mr. Wood owed $10,664.76 in interest to the Town, even though he had by then paid the principal on the original $51,300.00 fine. In regards to the Town's requests concerning injunctive relief imposed by the 21012 Corrected Merits Decision and Judgment Order, the Court concluded that:

More troubling is Mr. Wood's response to the Town's assertion that he has failed and refused to satisfy the injunctive directives contained in the Corrected Judgment Order. That Order established specific timelines for Defendants to hire a licensed engineer for the specific purpose of preparing "a plan for the safe removal of the wall and [other] unauthorized improvements on the Diner and Club parcels . . . ." Corrected Judgment Order at 2, ¶ E. The Town has provided numerous extensions of the deadlines by which Defendants were to: (a) disclose the engineer hired to prepare the plan required by the Court's Order; (b) submit the engineer's plan and allow the Town to review and comment upon it; (c) complete the removal work, once approved by the Town; and (d) arrange for their engineer to certify that the removal work was completed according to the approved plans. Id. at 1–3, ¶¶ C–J.

The undisputed facts presented show that Mr. Wood has allowed each deadline and the agreed-upon extensions to pass without complying with the Court's Order. The exhibits presented by Mr. Wood reveal that the engineer he hired may not be aware of the directives of this Court (especially the directive that

the offending wall and other structures be removed) and that Mr. Wood, instead, may have hired the engineer to perform services directly counter to the Order. He has refused the Town's request to receive direct verification from the engineer that he is even aware of the terms of the Court's Order.

Mr. Wood continues to assert that his unpermitted and dangerous structures should be allowed to remain on his property, even after nearly fifteen years of disputes with the Town, Court rulings against him, and affirmances of those orders by the Vermont Supreme Court. While Mrs. Wood appears to be less complicit and more of a silent partner in her husband's unpermitted commercial endeavors, she has taken no actions towards conforming to the Court's two-year-old Judgment Order.[9]

For all these reasons, we find both Mr. and Mrs. Wood in **CONTEMPT** of this Court's March 27, 2012 Corrected Judgment Order. In **GRANTING** the Town of Hartford's motion to enforce, we do hereby **ORDER** Mr. and Mrs. Wood to do the following within the next thirty days (i.e.: no later than **12:00 Noon on Friday, September 12, 2014**):

1.  Pay to the Town of Hartford the sum of $10,664.76;

2.  Provide a full copy of this Court's March 27, 2012 Corrected Merits Decision **and** Judgment Order to their engineers, Souhegan Valley Engineers, Inc., as well as a copy of this Entry Order;

3.  Authorize their engineers to speak with any officials designated by the Town, so that the Town may confirm that Defendants' directives conform with this Court's Orders;

4.  Fulfill the remaining injunctive provisions of this Court's March 27, 2012 Corrected Judgment Order, using **September 12, 2014 as the final deadline** to calculate all remaining deadlines.

Mr. Wood professes a desire to comply with this Court's Order. His actions contradict his words. He asserts that the Town has defrauded him and the Court, but he offers no specific facts to support that assertion. We find his accusations against the Town not credible.

We have specifically deferred our ruling upon the Town's request to direct that Defendants reimburse the Town for its [additional] attorneys' fees and expenses in seeking the Defendants' conformance with this Court's Order. We intend to rule upon that request after we determine whether Defendants cure their contempt, as directed by this Entry Order. We direct that the Town prepare an

---

[9] In fact, the Court clarified that this Court's monetary fines were directed solely to Mr. Wood, as the only active owner/developer of the property. Town of Harford v. Wood & Wood NOV & Permit Applications, Nos. 138-8-10 Vtec, 1-1-11 Vtec, slip op. at 2 (March 3, 2015) (Durkin, J.).

accounting of all of its past and continuing expenses, so that the Court may review and rule upon the reimbursement of those expenses, if warranted.

Town of Hartford v. Wood & Wood NOV Appeal & Permit Applications, Nos. 138-8-10 Vtec, 1-1-11 Vtec, slip op. at 1–2 (Aug. 12, 2014).

We deferred a ruling upon the Town's motion for further penalties and reimbursement of attorneys' fees in light of Mr. Wood's contempt, all in an effort to provide Mr. Wood with another incentive to bring his properties into compliance with this Court's Corrected Judgment Order and the Town Zoning Regulations.

Despite this Court's directives, Mr. Wood allowed the revised September 12, 2014 deadline to pass without bringing his properties into compliance, either in regards to the retaining wall or the Diner building.

The Court was next called upon to consider Mr. Wood's compliance when a motion was filed "to clarify corrected judgment order" on March 7, 2016, by Mr. Wood's then attorney, Kelli J. Rockandel, Esq. By this motion, Mr. Wood asked the Court to clarify what portions of the Diner building were regarded as "unauthorized improvements." Defendants' Motion, filed March 7, 2016, at 1. The parties had attempted to come to an agreement on what portions of the then-partially reconstructed Diner building should be regarded as "unauthorized improvements" and must therefore be removed. See correspondences attached to the March 7, 2016 Motion as exhibits. The parties could not come to an agreement on which portions of the Diner building must be removed, so the Court set the matter for hearing. However, that hearing was delayed, principally due to requests from Mr. Wood. See Entry Orders filed on April 13, 2016, July 5, 2016, and August 8, 2016. The hearing was also delayed due to Attorney Rockandel's request to withdraw as Mr. Wood's attorney and the request by Mr. Wood's new attorneys—Katelyn Ellerman, Esq. and Hans Heussey, Esq.—to be afforded sufficient time to review the history of these actions and to prepare for the hearing.

The Court conducted the hearing on Mr. Wood's motion to clarify on August 30, 2016, at the Vermont Superior Court, Civil Division in Woodstock, Vermont. The Court attempted to clarify its 2012 Corrected Judgment Order directives on the record of that hearing and otherwise denied his motion. The Town's attorney reminded the Court that its requests were still outstanding for reimbursement of attorneys and other costs as a consequence of Mr. Wood's contempt, found by the Court in its August 12, 2014 Entry Order. The Court therefore directed the Town to itemize the fees and expenses for which the Town was seeking reimbursement from Mr. Wood, and the Court then allowed both parties an opportunity to file post-hearing memoranda, proposed finding of fact and conclusions of law. Those filings were then completed on November 6, 2016 and the Court issued its 2017 Revised Decision on Post-Judgment Motions on April 3, 2017.[10] In the 2017 Revised Decision, the Court announced the following factual and legal conclusions:

---

[10] The Court issued its original Decision on Post-Judgment Motions on March 1, 2017. On March 13, 2017, he Town filed its Motion to Alter or Amend that Decision to correct a typographical error in ¶ 19(i), to add the deadline of "November 15, 2017" to ¶ A of the Order on page 8, and clarifying the revision to Note 4 (see ¶19(c) on page 6)

1.  . . ..

2.  These cases, and their predecessors, have presented several challenging legal issues, all of which have been addressed on multiple occasions by this Court and the Vermont Supreme Court.  The fact that Mr. Wood has allowed the unpermitted structures to remain on his properties for multiple years, after multiple court orders, would normally cause a reviewing court to doubt Mr. Wood's credibility.  We have concluded, however, that a more troubling consequence is at work: because of his persistence to develop his property, even when his permit applications have either been denied or deemed incomplete, and his conviction that officials at the Town of Hartford have acted to thwart his development efforts without just cause, this Court has concluded that Mr. Wood does not have the ability to clearly review and accept this Court's directives, even when affirmed by the Vermont Supreme Court.

. . ..

4.  Mr. Wood, both directly and through his attorney, stated at the hearing that his current motion to clarify was "solely" focused upon his efforts to save that portion of the "Diner" building that was not destroyed by fire and was not improved in violation of the zoning regulations.  We address those claims below.  However, while not specifically stated, Mr. Wood appeared at various times to also argue for a "clarification" of whether he was obligated to remove all of the cement slabs used in his construction of the retaining wall.

. . ..

7.  The Diner building was substantially (i.e. more than fifty percent) destroyed by fire nearly ten years ago.  The building has no roof and is missing at least one full exterior wall.

8.  Mr. Wood was unable during the hearing to provide a credible summary of the work he wishes to complete to secure the Diner, absent work that would be more rehabilitative in nature and for which he would need, but has yet to receive, a zoning permit.

9.  The credible evidence received has convinced the Court that the property can only be made safe by the complete removal of what remains of the Diner building.

2017 Revised Decision at 3–4.

Based upon these factual findings, and in light of the Town's repeated requests that this Court find Mr. Wood in additional contempt, the Court announced two legal conclusions.  First, as to the removal of the offending portions of the Diner building, the Court concluded that:

---

by removing the phrase "as part of this project."  The Court thereafter issued its Revised Decision.  See Town of Hartford v. Wood & Wood NOV Appeal & Permit Applications, Nos. 138-8-10 Vtec, 1-1-11 Vtec, slip op. at fn. 1 (Apr. 3, 2017) (hereinafter referred to as "2017 Revised Decision").

. . .. As outlined in the first pages of this Decision, the [2012] Corrected Merits Decision and Judgment Order that is the focus of Mr. Wood's motion was issued nearly five years ago and was affirmed by the Vermont Supreme Court over three and a half years ago. The applicable time limitations for amendments or reconsiderations of judgment under V.R.C.P. 59 and 60 have long since passed.

We were grateful to learn that Mr. Wood has taken the steps to satisfy the penalty provisions of this Court's judgment. However, we remain very troubled that the offending wall remains on site and that little actual site work has begun to remove the offending structures, even up through the date of our August 30, 2016 hearing on the pending motions.

In light of the procedural history of this litigation, and the litigation that preceded it, and the credible evidence presented at the post-judgment motions hearing, we conclude that Mr. Wood is incapable of differentiating between those portions of the Diner parcel that remain undamaged by fire and that may be rehabilitated without first obtaining a zoning permit [and those portions that were constructed without a permit]. We therefore **CLARIFY** our Corrected Merits Decision and Judgment Order by directing that Mr. Wood cause the entirety of the remnants of the Diner building to be removed from his properties.

Id. at 7.

Turning to the Town's request that Mr. Wood be held further in contempt and directed to reimburse the Town for its additionally-incurred attorneys' fees, the Court concluded that:

Lastly, we take up the Town's claim that the Court should hold Mr. Wood in [additional] contempt and direct that he be ordered to cure such contempt and reimburse the Town for the additional attorneys' fees that were necessitated by Mr. Wood's contempt. By Mr. Wood's own admission, he has failed to satisfy the injunctive directives of this Court's prior orders. While there has been some legitimate basis for confusion over some details for the wall removal and slope stabilization, the uncontested testimony was that Mr. Wood has failed, some five years after judgment, to even begin the process to set up and begin the dismantling of the unpermitted structures. In fact, and incredibly, it appears that up until just prior to the August 30, 2016 hearing, Mr. Wood was still attempting to convince his engineer and the Town officials to allow his unpermitted wall to remain on the property. All these actions evidence a contempt of the Court's order of nearly five years ago.

The Town has incurred over $20,000.00 in additional legal fees and expenses in its efforts to convince Mr. Wood to voluntarily satisfy the Court's judgment. The fees and expenses claimed by the Town are reasonable in this Court's judgment, particularly in light of Mr. Wood's contemptuous responses and the efforts the Town was required to expend. We therefore will direct that Mr. Wood reimburse the Town $20,000.00 for the fees and expenses he has caused the Town to incur,

provided however that Mr. Wood shall be entitled to a $6,000.00 credit, that the Court has fashioned as an incentive to complete the needed work on a timely basis.

Id. at 8.

By this ruling, we again attempted to provide Mr. Wood with an incentive to cure his contemptuous conduct, some five years after our original Merits Decision, four years after the Supreme Court affirmed that Decision, and three years after this Court had found Mr. Wood in contempt of the 2012 Corrected Merits Decision. Nonetheless, the Court extended the deadline for Mr. Wood to bring his property into conformance, until **November 15, 2017**, and provided him with a $6,000.00 credit against the $20,000.00 awarded the Town in reimbursement of its attorneys' fees and expenses, if he were to meet that deadline.

Mr. Wood chose to let that deadline pass, without bringing his property into conformance, without filing a timely appeal from our 2017 Revised Decision, and without filing a V.R.C.P. 60(b) motion until after that deadline had passed.

Nearly one year after our 2017 Revised Decision, on March 5, 2018, Mr. Wood filed the present Rule 60(b) motion to be relieved from the monetary and injunctive provisions of our 2017 Revised Decision, finding that he had failed, without justification, to comply with this Court's 2012 Corrected Merits Decision and Judgment Order.[11] Mr. Wood now specifically requests that he be relieved from reimbursing the Town for its additional $20,000.00 in attorneys' fees and expenses, and he now challenges this Court's jurisdiction to order that he remove the entire Diner building.[12]

Mr. Wood's Rule 60(b) motion is the only post-judgment motion pending in these two appeals. We therefore look to that procedural rule for guidance on how to consider Mr. Wood's pending requests.

**Analysis**

Mr. Wood now asks the Court to reconsider its order that he remove the entire Diner building, and that the Court vacate its order that he reimburse the Town $20,000.00 in expenses. Attorney Simon, on Mr. Wood's behalf, also asserts that the Court should vacate its 2017 Revised Decision because it lacked subject matter jurisdiction to render some or all of those determinations.

1. **Timeliness**

Under Civil Rule 60(b), a trial court may relieve a party from a final judgment, order, or proceeding, in relevant part, for the following reasons: "(1) mistake, inadvertence, surprise, or

---

[11] Both parties have referred to Mr. Wood's latest Rule 60(b) motion as being dated March 1, 2017. While that is accurate, Mr. Wood did not cause his motion to be filed with the Court until March 5, 2017. We refer to the filing date as the operative date for purposes of our analysis under Rule 60(b).

[12] It is not clear from the parties' filings whether Mr. Wood has already reimbursed the Town this $20,000.00, and is now requesting that payment's return, or has not yet paid and is requesting to be relieved from that obligation. This lack of clarity does not impact upon our analysis of Mr. Wood's Rule 60(b) motion.

excusable neglect . . . (3) fraud . . . misrepresentation, or other misconduct of an adverse party; or (6) any other reason justifying relief from the operation of the judgment." V.R.C.P. 60(b).

Any motion filed pursuant to Rule 60(b) must be filed within a "reasonable time," and those filed under 60(b)(1) or (3) must be made within "one year after judgment, order, or proceeding was entered or taken." Id. Our reading of Mr. Wood's pending motion is that he is requesting relief under subsections (1), (3) and (6).

By his motion, Mr. Wood argues that the Court made a "mistake" in this matter, and that the Court was "misled" by the Town and its attorney. Mot. for Relief from Judgment at 4, 5. In Mr. Wood's Reply to the Town's opposition to his pending motion, he adds that he is moving for relief pursuant to Rule 60(b)(6) because he alleges that the Court did not have subject matter jurisdiction over "relevant fixtures located on the Wood Property." Reply at 2.

The Town argues that the pending motion was not timely filed, in part because it comes more than one year after our March 1, 2017 Decision. Mr. Wood responds that the motion is timely, both because it was filed less than one year from our April 3, 2017 Revised Decision, and the one-year timeframe does not apply to Rule 60(b)(6) motions. Because Mr. Wood filed his motion with the Court on March 5, 2018, we conclude that it was filed within one year after our Revised Decision.

The time restriction set out in Rule 60(b) has two conjunctive parts. First, the motion must be filed in a reasonable time. Second, in addition to this, motions filed under 60(b)(1) or (3) must be filed within one year. Our interpretation of the Rule is that, even when a motion filed under subsections (1) or (3) are filed within the one-year deadline, we must still determine if it was filed "within a reasonable time." Id.

Here, we ordered the Woods to remove any "unauthorized improvements" on March 27, 2012, five years before he filed the pending motion. That determination was affirmed by the Supreme Court four year ago. Two years after our 2012 ruling, we found the Mr. Wood had failed to comply with that order, and denied his motion for relief from it. Two years after that, Mr. Wood again sought clarification on what the Court meant by "unauthorized improvements." In our April 3, 2017 Decision we concluded that Mr. Wood had shown that he was incapable of differentiating from the remnants of the burnt Diner and the improvements that he had unlawfully made, a distinction that the Court made in its 2012 ruling requiring the removal of such "unauthorized improvements." We therefore concluded that "the property can only be made safe by the complete removal of what remains of the Diner building." 2017 Revised Decision at 4, ¶ 9. We made this determination based upon the credible evidence presented, Mr. Wood's continued confusion and request that we clarify which portions of the Diner parcel needed to be removed (even when he was unable to describe how to distinguish between the two), and the fact that the Diner building had been substantially (i.e. greater than 50%) destroyed by fire some ten or more years prior.

Now, nearly a year after that April 3, 2017 Decision was issued, Mr. Wood sought relief from it. We conclude that because of all the procedural circumstances cited above, Mr. Wood's motions under subsections (1), (3) and (6) were not filed within a "reasonable time."

Further, we are reminded that a Rule 60(b) motion should not be allowed to "function as a substitute for a timely appeal." Tetreault v. Tetreault, 148 Vt, 448, 451 (1987); see also Richwagen v. Richwagen, 153 Vt. 1, 3 (1989). We are further reminded that Rule 60(b) relief "should only be applied in extraordinary circumstances." John A. Russell Corp. v. Bohlig, 170 Vt, 12, 24 (1999). We conclude that Mr. Wood has not presented evidence of "extraordinary circumstances" that would justify vacating our 2017 Revised Decision.

In his pending motion, Mr. Wood seeks relief not from a merits decision, but rather from a decision that found him in contempt of a previously issued merits decision, one made final four years earlier by the affirmation issued by the Vermont Supreme Court. Mr. Wood's pending arguments do not so much cite to mistakes made by this Court in its original or supplemental rulings. Rather, Mr. Wood now appears to assert challenges to the contempt findings that should have been raised in a timely appeal from our April 3, 2017 contempt determinations. Mr. Wood doesn't so much argue that we were mistaken on the facts or the law, but that we should have denied the Town's contempt requests and ruled in his favor. Those arguments would have been more appropriate to raise in a timely appeal.

Even though we conclude that Mr. Wood's motion is untimely, we turn to address the merits of Mr. Wood's request.

### 2. Subject Matter Jurisdiction Over the Diner Remnants

First, we address Mr. Wood's most recent challenge: that this Court asserted jurisdiction over the Diner building where it had not done so before. The long procedural history of these litigations serves to refute Mr. Wood's assertion. The present matter concern's Mr. Wood's appeal of the 2010 NOV and the Town's subsequent enforcement of the NOV. The 2010 NOV addressed multiple alleged violations on Mr. Wood's property including renovations and related work on the Diner building. In fact, removal of the unlawfully improved portions of the Diner building was a subject during the 2011 trial and in the 2012 Corrected Merits Decision in this coordinated action, as noted above.

In fact, Mr. Wood's claims concerning the Diner building and the Town's allegations that he had illegally improved the Diner building have been the subject of multiple litigations over the course of the last fifteen years. See In re Appeal of Wood, Nos. 121-7-03 Vtec, 185-10-04 Vtec (Vt. Envtl. Ct. Apr. 16, 2008) (Durkin, J.); In re Appeal of Wood, Nos. 185-10-04 Vtec, 174-8-05 Vtec (Vt. Envtl. Ct. Apr. 13, 2006); In re Appeal of Wood, No. 185-10-04 Vtec (Vt. Envtl. Ct. Dec. 21, 2007) (Durkin, J.). In these and many other Dockets, Entry Orders, and Decisions, we addressed the Town's claims that Mr. Wood was making improvements to the Diner building that were not authorized by a zoning permit. Mr. Wood made many claims that he didn't need a zoning permit for the Diner work that he had performed. In all instances, the credible evidence convinced the Court to rule in the Town's favor.

In fact, in two separate Dockets, Mr. Wood claimed that he was entitled to an amended permit and certificate of occupancy ("CO") for his buildings and property. See In re Wood Zoning Permit Amendment Appeal, No. 81-4-07 Vtec (Vt. Envtl. Ct. Aug. 27, 2007) (Durkin, J.); In re Wood Certificate of Occupancy Appeal, No. 176-8-07 Vtec (Vt. Envtl. Ct. June 10, 2009) (Durkin, J.). In

the CO appeal, Mr. Wood claimed that he had sufficiently completed the work on his retaining wall and Diner building so as to be entitled to a CO. However, this Court concluded that Mr. Wood had not completed his work in compliance with a zoning permit. Id. at 2.

In summary, Mr. Wood's work on the Diner parcel, including work on the Diner building, and his failure to abide by the permit conditions or zoning regulations in completing that work had been the subject of multiple litigations and multiple written decisions over the past nearly fourteen years. We have addressed the legality of Mr. Wood's work on the Diner parcel because Mr. Wood had raised those legal issues in the Statements of Questions that are too numerous to count. Yet, in each instance, we have thoroughly reviewed the legal challenges Mr. Wood has presented, balanced them against the arguments offered by the Town, and ruled as the law requires. In every instance where Mr. Wood has challenged our factual and legal determinations in an appeal to the Vermont Supreme Court, his appeal has failed.

For all these reasons, we conclude that jurisdiction over Mr. Wood's improvements to the burnt-out Diner building was conferred on this Court by the legal issues that Mr. Wood presented in his appeal of the 2010 NOV and the subsequent enforcement action. We therefore cannot adopt Mr. Wood's present argument that this Court did not have the jurisdiction to order removal of the whole Diner building in its April 3, 2017, Revised Decision on Post-Judgment Motions.

We find further support for our 2017 Revised Decision in the purpose for that Decision: we were addressing the Town's additional motion for sanctions, due to a previous finding that Mr. Wood had been in repeated contempt of this Court's 2012 Corrected Merits Decision. At the August 30, 2016 hearing on the pending post judgment motions, the Court was dismayed by the fact that Mr. Wood, even at this late date, could not distinguish what lawfully remained of the Diner building and explain what work he had completed without a necessary permit. The Diner building had by then sat incomplete and severely damaged by a fire that consumed more than half of the building. Much of its roof and most of one wall were gone. Given all these circumstances, and as a consequence of Mr. Wood's continued contempt and disregard of this Court's multiple orders, we concluded that he should be ordered to remove the entirely of the Diner building.

We continue to believe that our April 3, 2017 rulings were supported by substantial facts and applicable law. We therefore decline to reverse that ruling.

### 3. **Reasonableness of the $20,000 Reimbursement**

For similar reasons, we decline to reverse our sanction against Mr. Wood, requiring him to reimburse the Town for the additional $20,000.00 in attorneys' fees and expenses incurred by the Town as a direct result of Mr. Wood's further contempt of this Court's prior final orders. In these two Dockets alone, our April 3, 2017 Revised Decision represents the third instance where we concluded that Mr. Wood has failed to address the injunctive measures directed by the Court concerning the development of his properties. Mr. Wood now claims that he is not capable of paying the imposed sanctions, and yet he has failed to present any specific evidence of his inability to pay. In fact, he has satisfied the prior monetary sanctions imposed by this Court.

The Court again finds it astonishing that Mr. Wood, even while satisfying the monetary sanctions that this Court has imposed, continues to defy the injunctive directives of this Court. On several occasions, we have offered to waive a portion of the monetary sanctions imposed upon him, if Mr. Wood would simply return his property to a safe and lawful condition. Mr. Wood has elected to not take advantage of those fine waivers.

The Court established a procedure whereby the Town was required to itemize the additional attorneys' fees and expenses that it sought from Mr. Wood, and then Mr. Wood was provided with several months in which to examine and challenge the Town's itemization. Mr. Wood did not specifically challenge any or the Town's fee requests. In the absence of a credible challenge, we decline to revise our previous ruling.

### 4. Town's Request for Reimbursement of Further Attorneys' fees

Lastly, we turn to the Town's most recent claim for reimbursement of additional attorneys' fees and expenses, contained in the Town's responses to Mr. Wood's post-judgment motion for relief. See Town's Opposition Memoranda, filed on April 3, 2018 and June 28, 2018.

We decline to consider the Town's most recent reimbursement requests at this time. While the Town clearly stated its requests in both of its Opposition Memoranda, there had not been a specific motion filed, seeking those reimbursements. Without a motion, there has not been sufficient notice to Mr. Wood, or the Court, of the basis and specificity of the Town's claims.

We also hope that, with a new attorney assisting him, Mr. Wood and his attorney will seek to review with the Town those claims, as well as avenues for bringing some finality to these long-running litigations.

**Conclusion**

For the foregoing reasons, we **DENY** Mr. Wood's motion for relief from our 2017 Revised Decision. As such, we re-close these matters.

**So Ordered.**

Electronically signed on September 19, 2018 at Burlington, Vermont, pursuant to V.R.E.F. 7(d).

_____
Thomas S. Durkin, Superior Judge
Environmental Division

Notifications:

William F. Ellis (ERN 3412), Attorney for Plaintiff Town of Hartford

Brice C. Simon (ERN 4545), Attorney for Appellant Marc Wood